Greg Steele filed a complaint against General Motors Corporation, d/b/a Saginaw Steering Gear, in the Limestone County Circuit Court, seeking workers' compensation benefits. Steele alleged that he suffered three separate back injuries — one on October 16, 1992, one on June 9, 1993, and one on May 1, 1994. Following oral proceedings, the trial court entered a judgment in favor of General Motors, finding that Steele had failed to give notice within five days after the occurrence of his accidents, as required by § 25-5-78, Ala. Code 1975.
Steele appeals, contending that the trial court erred in finding that he had failed to give notice of his October 16, 1992, injury and his May 1, 1994, injury as required by §25-5-78.
Steele's injuries occurred on October 16, 1992, June 9, 1993, and on May 1, 1994; therefore, the new Workers' Compensation Act is controlling. The standard of review of a workers' compensation case under the new Act was stated by our supreme court in Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala. 1996):
 "[W]e will not reverse the trial court's finding of fact if that finding is supported by substantial evidence — if that finding is supported by 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' "
680 So.2d at 268-69 (quoting West v. Founders Life AssuranceCo., 547 So.2d 870, 871 (Ala. 1989)). See also § 25-5-81(e), Ala. Code 1975. The new Act also provides that "[i]n reviewing the standard of proof set forth *Page 404 
herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness." §25-5-81(e)(1).
Section 25-5-78 provides:
 "For purposes of this article only, an injured employee or the employee's representative, within five days after the occurrence of an accident, shall give or cause to be given to the employer written notice of the accident. If the notice is not given, the employee or the employee's dependent shall not be entitled to physician's or medical fees nor any compensation which may have accrued under the terms of this article, unless it can be shown that the party required to give notice had been prevented from doing so by reason of physical or mental incapacity, other than minority, fraud, or deceit, or equal good reason. Notwithstanding any other provision of this section, no compensation shall be payable unless written notice is given within 90 days after the occurrence of the accident or, if death results, within 90 days after the death."
Our supreme court interpreted § 25-5-78 in Ex parte Murray,490 So.2d 1230 (Ala. 1984), stating:
 "Section 25-5-78 specifies two time periods with respect to notice. Cases interpreting these notice provisions of the Act have treated the time provisions in a variety of ways. Several cases have treated the 90-day limitation as absolute, while failing to even mention the 5-day provision. . . .
 "We find no case that definitively differentiates between the two time provisions or that delineates the operative effect of the two separate requirements. It is clear that a rule of absolutism cannot be applied to both the 5-day and the 90-day requirements. If this were true, failure to comply with the 5-day limitation, in all events, would bar an employee's right to [workers'] compensation benefits. It is equally clear that actual notice within 5 days necessarily constitutes compliance with the 90-day requirement.
 "Unquestionably, the savings clause is applicable only to the 5-day limitation period. Furthermore, the language that includes the word 'accrued' in connection with the imposition of forfeiture of benefits appears only with the respect to the 5-day provision. The savings clause is a means by which an employee may avoid the sanction of forfeiture. That forfeiture can be effective only where no 'good reason' can be shown for failure to notify the employer within 5 days of the injury. . . . In that event, if the employer received actual notice within 90 days of the injury, the employee would forfeit only those payments accrued up to the time of notification. We believe this is the only interpretation that gives a reasonable field of operation to both the 5- and the 90-day provisions, particularly in view of the phrase '[benefits] which may have accrued.' "
490 So.2d at 1232-33 (citations omitted).
It is undisputed that Steele did not give written notice of any of his accidents and injuries. However, written notice is not required where it is shown that the employer had actual notice of the injury. Davis v. Paragon Builders, 652 So.2d 762
(Ala.Civ.App. 1994). Oral notice is sufficient to give the employer actual notice. Id. Like written notice, oral notice imparts to the employer the opportunity to investigate and to protect itself against simulated and exaggerated claims.International Paper Co. v. Murray, 490 So.2d 1228
(Ala.Civ.App. 1984), reversed on other grounds, Ex parte Murray, supra.
Knowledge on the part of a supervisory or representative agent of the employer that a work-related injury has occurred will generally be imputed to the employer. Davis, supra.
The record reveals the following facts: Steele testified that on October 16, 1992, while he was picking up a rack and pinion parts off a pallet, he felt a sharp pain in his right hip, which began hurting. He testified that he thought he had bruised his hip, that he worked the next day, and that his hip would bother him and then it would get better. Steele testified that within one week after the accident, he entered into an in-house alcohol treatment program offered by General Motors and that while enrolling in the program, he told the program's doctor, *Page 405 
Dr. White, that he thought he had hurt himself at work. Steele testified that Dr. White sent him to Dr. Wise, that he was present when Dr. Wise called General Motors to report his injury, and that he thought Dr. White had also called General Motors to report his injury.
Steele testified that in November 1992, when he asked Charles Hough, an employee of General Motors, why he was not receiving workers' compensation benefits, Hough said that Steele's claim for workers' compensation benefits had been denied because an accident report had not been completed. Steele also testified that in December 1992, he had surgery to remove a ruptured disc, that he received "S A" benefits while he was recuperating, and that he returned to work in April 1993.
Steele testified that he returned to work with certain restrictions, e.g., no stooping, no bending, and no lifting anything weighing over twenty pounds. He was placed on light duty and worked in different departments. Steele testified that on June 9, 1993, he slipped on some oil and fell, that his co-workers called the nurse, and that he was taken out of the plant by ambulance. He testified that as a result of his fall, he did not work for approximately two months, during which time he received physical therapy.
Steele testified that after he returned to work, he was placed in the "job bank," which meant he did light lifting and worked in different departments. He testified that in May 1994, he was "running a metal lathe" and was reaching in a bin to pick up some parts when he felt a sharp pain in his right side. Steele also testified that he went to "medical" and told the nurse that he thought he had hurt his back again and that he needed to see Dr. Lowery. He further testified that the nurse called and made an appointment for him with Dr. Lowery, who sent him to Dr. Frank P. Haws, the doctor who had performed the December 1992 surgery on Steele's back. In September 1994 Dr. Haws performed back surgery on Steele to remove another ruptured disc. Steele returned to work in March 1995. On cross-examination Steele admitted that he did not know the date of his 1994 injury.
Steele's wife, Patricia, testified that she handles the family finances and the scheduling of doctors' appointments. She testified that Steele was in the in-house alcohol treatment program for 21 days and that after he completed the program, he went to Dr. Hall about his back pain. Patricia testified that Dr. Hall advised them to see Charlie Hough at General Motors and that they went to see Hough, who told them that Drs. Wise and White had already called him to report Steele's injury. She also testified that Hough said he was denying Steele's claim for workers' compensation benefits because an accident report had not been completed.
Patricia testified that Steele was injured in August 1994 when he bent over to pick up parts, that she asked him if he had gone to "medical," that he told her that he had gone to "medical," and that the nurse had set up an appointment for him with Dr. Lowery. She further testified that Steele saw Dr. Lowery on August 16, 1994, that he saw Dr. Haws on August 22, 1994, and that Dr. Haws performed an MRI on Steele, which revealed a ruptured disc. Patricia also testified that Dr. Haws performed surgery on Steele, which had been pre-approved by General Motors, and that General Motors had paid for Steele's medications. She further testified that in November 1995, when she called General Motors to ask when her husband's compensation check would be available, she was informed that Hough had decided to deny Steele's 1994 claim for workers' compensation benefits. Patricia further testified that Steele did not receive any compensation checks after Hough decided to deny his 1994 claim.
Hough testified that he is employed as a workers' compensation supervisor for General Motors, that he met with Steele and Patricia, and that he had notes of his meetings with them. He testified that Steele called him on November 22, 1992, regarding his October 1992 injury and that this conversation was not the first notice that he had of Steele's injury. Hough also testified that he could not remember how, or when, he first heard of Steele's 1992 injury and that Steele and Patricia came to see him on November 25, 1992. He further testified that during that meeting, he told Steele and Patricia that *Page 406 
he was denying Steele's claim for workers' compensation because Steele had been diagnosed with degenerative disc disease.
Hough testified that Steele received workers' compensation benefits as the result of his June 9, 1993, fall and that General Motors had paid his medical bills resulting from that injury. He testified that employees are told to report all injuries to their supervisors and that if a supervisor is not available, to report to "medical." Hough also testified that he could not recall any reports of Steele's October 1992 or May/August 1994 injuries.
On cross-examination, Hough testified that Dr. White did not call him regarding Steele's October 1992 injury and that if Drs. White and Wise had called and spoken with someone in the workers' compensation or medical departments, he would not know about the calls. He testified that he denied Steele's 1992 claim because Steele was diagnosed with degenerative disc disease and that he denied Steele's 1994 claim because that injury was not reported.
Our supreme court has held:
 " 'The [Workers'] Compensation Act should be given a liberal construction to accomplish its beneficent purposes, and . . . all reasonable doubts must be resolved in favor of the employee.' American Tennis Courts, Inc. v. Hinton, 378 So.2d 235, 237 (Ala.Civ.App. 1979), cert. denied, 378 So.2d 239 (Ala. 1979).
 " '[A]n employee covered under the [workers'] compensation law is entitled to be fully compensated for a job-related injury and . . . the provisions of that law should be liberally construed to accomplish such a result.'
 "Haggard v. Uniroyal, Inc., 423 So.2d 865, 866
(Ala.Civ.App. 1982)."
Ex parte Hagan, 607 So.2d 219, 221 (Ala. 1992).
Keeping in mind the beneficent purposes of the Workers' Compensation Act, we conclude that Steele's October 16, 1992, injury to his back had not manifested itself until Steele enrolled in the in-house alcohol treatment program and that Steele's entry into the in-house alcohol treatment program was "good reason" for failing to comply with the 5-day period of § 25-5-78. Cook Transports, Inc. v. Beavers, 528 So.2d 875
(Ala.Civ.App. 1988); Alabama Textile Products Corp. v.Grantham 263 Ala. 179, 82 So.2d 204 (1955). Steele presented substantial evidence that he and his doctors gave General Motors oral notice of Steele's October 16, 1992, injury within the 90-day savings period of § 25-5-78.
With regard to Steele's June 9, 1993, injury, it is undisputed that General Motors had actual knowledge of Steele's June 9, 1993, injury. Moreover, the trial court failed to make any findings regarding Steele's 1994 injury. After reviewing the record, we find that Steele presented substantial evidence that General Motors had actual notice of his 1994 injury. Therefore, we conclude that the trial court's finding that Steele failed to comply with the notice provisions of § 25-5-78
is not supported by substantial evidence.
The judgment of the trial court is reversed and this case is remanded to the trial court for further proceedings.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED.
All the judges concur.