On August 14, 1996, Deborah Gibson sued her employer, Infinity Insurance Company, for medical treatment benefits under the Workers' Compensation Act for a job-related injury she had sustained during the course of her employment. Gibson also sought damages on a claim that she had been wrongfully terminated from her employment in violation of § 25-5-11.1, Ala. Code 1975.
Infinity moved to bifurcate the two claims; the court granted the motion on October 15, 1996. In November 1997, Infinity moved for a partial summary judgment on the retaliatory-discharge claim, arguing that Gibson had been discharged for failing to meet production standards; that Gibson had not established a prima facie case because she had not filed for workers' compensation benefits until after she had been discharged; and that Gibson had not been willing and able to return to work. On December 8, 1997, the court denied a summary judgment as to the retaliatory-discharge claim, and held a nonjury trial on the workers' compensation claim regarding Infinity's liability for medical benefits. The court entered an order in favor of Gibson, finding: that Gibson had "sustained a compensable workers' compensation injury in December 1994"; that the "condition of carpal tunnel syndrome was related to her work requirements"; that Gibson had provided adequate notice to her employer; and that Infinity was liable for medical treatment for Gibson's injuries.
Following the bench trial, the court held a jury trial on the retaliatory-discharge claim. Infinity moved for a judgment as a matter of law ("JML") at the close of the evidence, arguing that Gibson had failed to establish a prima facie case of retaliatory discharge and that she had not complied with notification requirements regarding a work-related injury. The court denied this motion. The jury found in favor of Gibson, awarding her $60,000 in compensatory damages. Infinity again moved for a JML on January 26, 1998, and the court denied this post-trial motion on March 4, 1998.
Infinity appeals, arguing that the court erred: (1) in denying its motion for a partial summary judgment on the retaliatory discharge claim; (2) in denying its motion for a JML; and (3) in awarding Gibson workers' compensation benefits.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a *Page 5 
judgment as a matter of law. Grider v. McKenzie, 659 So.2d 612
(Ala.Civ.App. 1994); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990). Additionally, the standard of review for a motion for a JML under the current version of Rule 50, Ala.R.Civ.P., is the same as the standard for review of a motion for a directed verdict and a motion for JNOV under Rule 50 as it read before the October 1, 1995, amendment.[1] See MontgomeryCoca-Cola Bottling Co., Ltd. v. Golson, 725 So.2d 996 (Ala.Civ.App. 1998).
Because of the date of Gibson's injury, this case is governed by the new Workers' Compensation Act. This new Act provides that an appellate court's review of the proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012,1014 (Ala.Civ.App. 1995).
The evidence suggests the following facts. Gibson had been employed by Infinity for over 21 years; during 10 of those years, she had held positions requiring her to type or key data entry. Around 1988, Gibson began receiving treatment for a condition known as "trigger finger." In September 1993, Gibson began working as a policy-service specialist; this job required her to perform data entry at least 50% of her time at work. In addition, Infinity implemented a new quota for all policy service-specialists, which required that they increase their speed and maintain a 97.5 accuracy rating.
Gibson testified that she orally informed her supervisor on December 20, 1994, that she was experiencing pain in her hands and that she could not continue typing. Gibson, along with another employee, Donna Cash, who had been diagnosed with carpal tunnel syndrome, both testified that they had a conversation on December 20 with their immediate supervisor, Suzanne Williams, in the presence of the company vice-president, Sheila Williams. The conversation centered around the inability of Gibson and Cash to perform their duties because of pain in their hands. Both Gibson and Cash confirmed that Gibson told Suzanne Williams that she was experiencing pain in her hands; that she was unable to continue typing; and that she was seeking medical attention that might require surgery on her hands. Suzanne Williams and Sheila Williams testified that Gibson had never told them that the problems she was experiencing with her hands were work-related. Suzanne Williams recalled a conversation with Cash; however, she contended that Gibson was not present.
In 1995, Gibson began receiving oral warnings that she was failing to meet quality standards imposed by the new quota system. In January and February 1996, Gibson received written warnings regarding *Page 6 
her performance rating. In February 1996, Gibson's employment was terminated; according to Infinity, the termination was based on Gibson's failing to meet standards. Gibson argued that she was terminated after she had reported her problems with her hands and had sought medical attention. Gibson was subsequently diagnosed with carpal tunnel syndrome, which her physician attributed to her employment, which required repetitive movement of her wrists, fingers, and hands. Her physician recommended surgery to correct this condition. Gibson stated that she had not undergone the surgery because her workers' compensation claim had been denied. According to the record, Gibson filed her workers' compensation claim on or about July 1996, by means of a letter from her attorney requesting that an injury report be filed.
It is well settled that Alabama recognizes the "at-will" employment doctrine, which allows the termination of employment at the will of either the employer or the employee; however, under Alabama law an employee may not be terminated in retaliation for seeking workers' compensation benefits. In Allen v. AlbrechtEnterprises, Inc., 675 So.2d 425 (Ala.Civ.App. 1995), cert.denied, 675 So.2d 428 (Ala. 1996), this court stated:
 "An Alabama employment contract is terminable at will by either party, with cause or without cause, and for even no reason or a bad reason. Hoffman-La Roche, Inc. v. Camp-bell, 512 So.2d 725 (Ala. 1987). The Alabama Legislature carved an exception to the employee-at-will rule in the case of a dismissal based only on the fact that the employee has filed a workers' compensation claim. Culbreth v. Woodham Plumbing Co., 599 So.2d 1120 (Ala. 1992). . . .
 "Our Supreme Court has interpreted this statute to indicate that an employee establishes a prima facie case of retaliatory discharge by presenting substantial evidence that he or she was terminated for seeking to obtain workers' compensation benefits. Twilley v. Daubert Coated Prods., Inc., 536 So.2d 1364, 1369 (Ala. 1988). In several subsequent cases, the court elaborated on this statement and found that an employee could establish a prima facie case of retaliatory discharge by proving that she filed a workers' compensation claim for a work-related injury, that the injury prevented her from working for a period of time, and that when she returned to work she was informed that she no longer had a job."
Id. at 427. In Allen, we upheld a summary judgment for the employer, holding that the employee had failed to prove a retaliatory-discharge claim because she had been terminated the day before she filed her workers' compensation claim.
 "The fact that the company terminated the worker before
she filed her claim for workers' compensation benefits does not comport with the necessary requirement for establishing a retaliatory discharge claim; that is, the worker filed a workers' compensation claim and because she sought workers' compensation benefits, was dismissed from her employment. The worker simply has no evidence to support her mere allegation of a retaliatory discharge claim. Cf. Terry v. Lee Apparel Co., 656 So.2d 811, 813 (Ala.Civ.App. 1994)."
Id. at 427.
Based on our review of the evidence, we conclude that Gibson did not meet each element in establishing her claim of retaliatory discharge. Gibson was terminated several months before she filed her claim for workers' compensation benefits; therefore, she did not meet the requirements for a prima facie case of retaliatory discharge. Accordingly, we conclude that the trial court erred as a matter of law in denying Infinity a partial summary judgment as to the retaliatory-discharge claim. The jury verdict is therefore vacated. Based on that holding, we pretermit discussion of the remaining arguments relating to the retaliatory discharge claim. As *Page 7 
it relates to the retaliatory-discharge claim, the judgment is reversed. On remand, the circuit court is to enter on that claim an order consistent with this opinion.
As to the award of workers' compensation benefits, we conclude that the court did not err in awarding Gibson benefits for medical treatment. There is substantial evidence to support the finding that Gibson sustained a work-related injury — carpal tunnel syndrome caused by her work duties — and that she is entitled to medical treatment provided through her employer's workers' compensation program. See Dunn Bradstreet Corp. v.Jones, 678 So.2d 181 (Ala.Civ.App. 1996); and Neely Truck Line,Inc. v. Jones, 624 So.2d 1385 (Ala.Civ.App. 1993). In addition, we conclude that the evidence supports the trial court's holding that Gibson provided adequate notice to Infinity regarding her medical condition to place the company on notice and to fulfill the requirements of the Workers' Compensation Act. SeeSteele v. General Motors Corp., 705 So.2d 402, 404
(Ala.Civ.App. 1997) ("[O]ral notice is sufficient to give the employer actual notice"); and Dunn Bradstreet Corp., supra (trial court made a finding as to the notice requirement). We therefore affirm that portion of the judgment awarding Gibson medical benefits.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ. concur.
THOMPSON, J., recuses himself.
[1] That October 1, 1995, amendment to Rule 50, Ala.R.Civ.P., changed the terminology relating to what had been known as a motion for a directed verdict and a motion for a judgment notwithstanding the verdict.