Southland National Insurance Corporation ("Southland") filed an interpleader action, Rule 22, A.R.Civ.P., naming as defendants Margarette D. Stone and James R. Smith. Southland deposited $50,000 with the trial court, which represented the proceeds from a Southland insurance policy on the life of Judie Smith, James Smith's wife. Ms. Stone, Judie's mother, filed a counterclaim against Southland, alleging, among other things, bad faith refusal to pay a claim, wantonness, and fraud in relation to its handling of the proceeds from the life insurance policy. The trial court awarded the interpleaded funds to James Smith and entered a summary judgment for Southland on Stone's counterclaim. Stone appeals from the judgment for Southland on her counterclaim; the judgment regarding interpleader is not before us.
In 1984, Southland issued James Smith a life insurance policy on his life that would pay $10,000 upon his death to his designated beneficiary, Judie Smith. That policy contained a "rider" insuring Judie Smith's life, but no beneficiary was designated for that insurance coverage.
The record indicates that on March 12, 1987, two applications for new life insurance policies were filed. In addition, a document requesting a change in James Smith's 1984 policy was submitted to Southland on behalf of James and Judie Smith. That document proposed an increase in the coverage provided by the "rider" on Judie Smith's life to $50,000 and named Margarette Stone as the beneficiary. However, in the two applications for new life insurance policies, James Smith was named the primary beneficiary of the policy on Judie's life, and Margarette Stone was named as the "contingent" beneficiary.[1]
Although it is unclear whether James signed the documents authorizing the changes in the existing policies, Judie signed, and someone signed James's name to the documents. A Southland employee, Dennis Painter, signed the documents as a witness to both Judie's and James's signatures.
Judie Smith died in September 1989. In November 1989, both James Smith and Margarette D. Stone filed claims with Southland for the life insurance proceeds. Southland then filed this interpleader action. It is unclear whether Southland was paying the $50,000 pursuant to the March 12 change in the "rider" or pursuant to an insurance policy based on the March 12 applications for life insurance. The parties make no argument that there are two $50,000 policies in effect — that is, a policy resulting from the rider and a policy issued pursuant to the March 12 applications for new insurance — but, instead, they argue as though only one policy in effect for $50,000 in coverage.
On appeal Stone challenges the summary judgment for Southland on her counterclaim alleging bad faith refusal to pay a claim, wantonness, and fraud. The standard used to determine the propriety of a summary judgment is found in Rule 56(c), A.R.Civ.P.:
 "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine *Page 1291 
issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
The burdens placed on the parties by this rule have often been described:
 "The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601
(Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533
(Ala. 1980)."
Schoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala. 1985).
Stone must prove her case by substantial evidence. Ala. Code 1975, § 12-21-12. In determining whether there is substantial evidence, we review the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Stephens v. City of Montgomery, 575 So.2d 1095, 1097
(Ala. 1991). Sanders v. Kirkland Co., 510 So.2d 138
(Ala. 1987). Substantial evidence is "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
Finally, a trial court's ruling on a summary judgment motion is a nondiscretionary ruling, and no presumption of correctness attaches to that ruling; accordingly, our review of the evidence properly presented in the record is de novo. Hightower Co. v. United States Fidelity Guaranty Co., 527 So.2d 698
(Ala. 1988).
We first address Stone's bad faith claim. In United AmericanInsurance Co. v. Brumley, 542 So.2d 1231, 1235 (Ala. 1989), we discussed bad faith actions:
 "In Alabama there are two 'prongs' to a bad faith action. This Court stated those 'prongs' in Jones v. Alabama Farm Bureau Mutual Casualty Co., 507 So.2d 396, 899 (Ala. 1986):
 " '[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either "(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal." '
 "The plaintiff in a bad faith action has a heavy burden, National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357 (Ala. 1982), and the elements of bad faith refusal to pay are:
 " '(a) An insurance contract between the parties and a breach thereof by the defendant;
 " '(b) An intentional refusal to pay the insured's claim;
 " '(c) The absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 " '(d) The insurer's actual knowledge of the absence of any legitimate or arguable reason;
 " '(e) If the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.'
 "Independent Life Accident Ins. Co. v. Parker, 449 So.2d 233 (Ala. 1984).
 "[The defendant] points out that in connection with these holdings the Court has held that usually for a plaintiff to make a prima facie case of bad faith, he must be entitled to a directed verdict on the underlying claim alleging breach of the insurance contract."
Stone's bad faith claim fails for at least two reasons. First, Southland did not refuse to pay the claim. To the contrary, by interpleading, it paid to the court an amount that the parties do not dispute is the full amount due, although it did not pay those proceeds to Stone. Furthermore, given that Judie Smith's March 12, 1987, *Page 1292 
life insurance application named James Smith as the primary beneficiary, while the form for the change in the 1984 insurance coverage listed Margarette Stone as the beneficiary, there was a fact question as to who was entitled to the proceeds of the policy, so Stone would not be entitled to a directed verdict on the underlying insurance contract claim normally required to sustain a bad faith action.Brumley, at 1235. Accordingly, Stone's bad faith claim fails, and, as to that claim, the judgment is due to be affirmed.
Stone argues that she presented substantial evidence of wanton conduct and of fraud, because she produced evidence that Southland employee Dennis Painter had signed the documents described earlier, supposedly to witness the signatures of both James and Judie Smith on the documents. Specifically, she contends that Painter's "false witnessing of the three documents" prevented the change of beneficiary designation in Judie Smith's rider coverage from James Smith to Margarette Stone.
Stone presents no evidence, however, of any adverse effect of Painter's allegedly improperly witnessing the signatures. "Wantonness" has been defined by the Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. McDougle v. Shaddrix, 534 So.2d 228 (Ala. 1988). Stone presented no evidence that Painter, even if he did not witness James Smith's signature but nevertheless signed the documents as though he had, did so conscious that injury would likely or probably result from his action. Accordingly, Stone did not present substantial evidence of her wantonness claim, and as to that claim the judgment is due to be affirmed. Id.
Stone's claim for fraud is also based on Painter's allegedly improper actions. Stone presented no evidence that a misrepresentation was made to her or that she was ever aware during Judie Smith's lifetime that she was the alleged primary beneficiary of Judie Smith's "rider," or that she in any way relied on anything Painter said or did. Accordingly, Stone failed to present substantial evidence to prove her fraud claim. Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602
(Ala. 1987).
Stone has proved no error, and accordingly, the judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] This document from Southland may help to explain why there were documents filled out both for new insurance and to change the coverage under the 1984 policy:
"IMPORTANT NOTICE REGARDING REPLACEMENT OF LIFE INSURANCE
 "In connection with this purchase, you have indicated that you may terminate or change your existing policy. Because of this, we are required to provide this notice to you and to leave with you copies of all documents used in the sale.
 "Whether it is to your advantage to replace your existing insurance, only you can decide. It is in your best interest, however, to have adequate information before a decision to replace your present coverage becomes final.
". . . .
"CAUTION
 "You are urged not to terminate your existing insurance until the new policy has been issued, examined and found acceptable to you. If you terminate your existing coverage and fail to qualify for the new life insurance, you may be unable to purchase other life insurance."