Sharon Cleveland Gilbert appeals from summary judgments entered for Congress Life Insurance Company and Robert Kenneth Cleveland. We affirm.
Paul Cleveland, Robert's brother, was enrolled in a health care plan underwritten by Congress Life. The plan provided a supplemental life insurance benefit in addition to its health benefits. In his application of December 7, 1990, Paul indicated that the beneficiary of the life insurance proceeds should be his brother, Robert.
Later, after Paul had entered into a relationship with Sharon, he filled out another application to include her as an additional insured under the health insurance policy. The application listed Sharon as Paul's wife *Page 593 
and gave her name as "Sharon H. Cleveland." There is no evidence that Paul and Sharon were formally married. Paul also wrote Sharon's name under "Name of beneficiary."
Less than two months after Sharon was listed as an additional insured under the health insurance policy, she left Paul. After Sharon had been gone for a month, Paul instructed the administrator of the health plan to delete her from the coverage. Sharon's coverage was discontinued as of December 31, 1991.
Paul died on February 4, 1992. A few days later, an agent of Congress Life informed Robert that he was the named beneficiary of Paul's life insurance benefit. Robert then made a proper claim on Congress Life. Sharon never submitted a claim.
Even though Robert was the named beneficiary of the policy, Congress Life felt that it was exposed to possible double liability because of the fact that Paul had listed Sharon on the second health insurance application as the "beneficiary." Congress Life therefore decided that it should interplead Robert and Sharon, and it did so in November 1992. Congress Life never denied that the policy was valid and never denied that it owed the $5,000 to whoever turned out to be the legitimate beneficiary.
Sharon sued Congress Life, alleging bad faith refusal to pay her the benefits, and also sued Robert, alleging intentional interference with contractual relations. Although the second health insurance application named Sharon as the beneficiary, it is not at all clear that this officially deleted Robert and confirmed Sharon as Paul's beneficiary. The insurance policy stated:
"4. Beneficiary or Mode of Payment Change.
 "The beneficiary and mode of payment may be changed by you unless you've assigned this right to someone else. To make a change, written request should be sent to the office where the beneficiary records are kept. If you do not know where the records are kept, send the request to the Administrator. When recorded and acknowledged, the change will take effect as of the date the request is signed by you. However, the change will not apply to any payments or other action taken by us before the request was acknowledged by the Administrator."
Paul never applied to change the beneficiary, but merely wrote Sharon's name under "Name of Beneficiary" on the form used to include Sharon as an additional insured. Later, Paul instructed the insurance administrator to remove Sharon from his coverage. Congress Life established that it had a fairly debatable reason for interpleading Robert and Sharon in regard to the $5,000 life insurance benefit.
This Court set out the standard for bad faith claims inNational Security Fire Casualty Co. v. Bowen, 417 So.2d 179
(Ala. 1982):
 "An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. No lawful basis 'means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or [a matter of] law.
 ". . . [T]he plaintiff in a 'bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, [the] plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment *Page 594 
without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim."
417 So.2d at 183 (citations omitted) (emphasis in original).
As the Court stated in National Savings Life Insurance Co. v.Dutton, 419 So.2d 1357 (Ala. 1982), this standard places a heavy burden on the plaintiff asserting such a claim:
 "In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law."
419 So.2d at 1362.
Sharon failed to produce sufficient evidence of a bad faith refusal on the part of Congress Life to pay her the life insurance benefits. She argues in her brief only that she was the common-law wife of Robert and was therefore entitled to the proceeds of the insurance policy. She correctly argues that she did not need to have an insurable interest in Robert's life, because it was he who owned the policy. Clearly, Paul could insure his own life and direct the insurance company to award the benefits to whomever he chose. However, Sharon failed to produce substantial evidence that Congress Life had no fairly debatable reason for refusing to pay her the policy proceeds.
By initiating an interpleader action, the stakeholder is admitting that it holds funds that are not its own, but says that it owes those funds to an undetermined party. "Historically, interpleader was available to protect a party who recognized an indebtedness, was willing to pay it, but was only interested in paying it once. The interpleader procedure affords the payor an opportunity to clothe his disbursement with the protection of a judicial determination." Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated, vol. 1, p. 344 (2d ed. 1986) (emphasis added). Because filing an interpleader action is equivalent to the plaintiff's admitting that it is willing to pay the legitimate claimant, an interpleading stakeholder cannot logically be subjected to a claim alleging bad faith refusal to pay, under the circumstances of this case. As we held in Stone v. Southland National Ins. Corp.,589 So.2d 1289 (Ala. 1991), a stakeholder who interpleads the funds claimed has not refused to pay. "To the contrary, by interpleading, [the stakeholder] paid to the court an amount that the parties do not dispute is the full amount due, although it did not pay those proceeds to [any particular claimant]." Id., at 1291.
Sharon's claim against Robert is equally meritless.
 "A prima facie case of intentional interference with business or contractual relations requires proof of the following elements: (1) existence of a contract or business relation; (2) defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; (4) absence of justification for the defendant's interference; and (5) damage [or loss] to the plaintiff as a result of defendant's interference."
Caine v. American Life Assurance Corp., 554 So.2d 962, 964
(Ala. 1989).
The reason for the interpleader action was that there was a question as to whether Sharon had a contractual relationship with Congress Life. She produced no evidence that Robert ever knew of any alleged contractual relationship or that any alleged interference was intentional. Further, Sharon produced no evidence that Robert ever actually interfered with any alleged relationship between her and Congress Life, other than by the perfectly legitimate act of properly filing his own claim with Congress Life.
Robert Cleveland and Congress Life contend that Gilbert's appeal is frivolous and that they, therefore, are entitled to an award of fees and expenses under Rule 38, Ala.R.App.P. This rule vests the imposition of sanctions within the sound judicial discretion of the appellate court. Under the facts of this case, we hold that the imposition of Rule 38 sanctions would not be appropriate.
AFFIRMED. *Page 595 
HORNSBY, C.J., and MADDOX, ALMON, SHORES, STEAGALL, INGRAM and COOK, JJ., concur.