This is a dispute over proceeds from a life insurance policy issued to Tullie R. Culverhouse, Sr., by Alfa Life Insurance Company ("Alfa").[1] In 1988, Tullie Culverhouse was murdered by a then unknown assailant. Tullie's son, Jason Hunter Culverhouse ("Hunter"), a named beneficiary under the Alfa policy, filed a claim for the proceeds of the policy. Alfa paid the claim. Some four years later, Hunter admitted that he had murdered his father. His brother, T. Robert Culverhouse, Jr. ("Robin"), then sued Alfa, claiming the proceeds provided for in the policy. Alfa moved for a summary judgment, arguing that pursuant to 43-8-253(f) and 27-14-24, Ala. Code 1975, it could not be held liable to Robin, because it had paid the claim to Hunter according to the terms of the policy and had done so without having received, at its home office or principal address, written notice of Robin's adverse claim. The trial court denied Alfa's summary judgment motion. Pursuant to Rule 5, *Page 326 
Ala. R.App. P., this Court granted Alfa permission to appeal from, that denial. We reverse and render a judgment for Alfa.
In May 1984, Alfa issued a preferred whole-life insurance policy on the life of Tullie R. Culverhouse, Sr., in the face amount of $100,000, with an accompanying accidental death benefit of an additional $100,000. Alfa issued this policy pursuant to an application signed by Tullie with his wife Nina Jo Culverhouse; the wife was listed as the owner and primary beneficiary. The contingent beneficiaries were Jason Hunter Culverhouse and Obie Lee Culverhouse ("Lee"), two of Tullie's three sons. Tullie's other son, Robin, was not a designated beneficiary, but, under the terms of the policy, if neither the primary beneficiary nor a contingent beneficiary survived Tullie, then Robin would receive the proceeds, as Tullie's heir.
On October 24, 1988, more than four years before he confessed to the murder, Hunter, the sole surviving beneficiary of his father's Alfa policy, completed and file a "claimant's statement," seeking payment of the proceeds. Robin witnessed Hunter's claimant's statement and entered into a consent settlement with him with respect to the estate assets.
While Alfa's consideration of Hunter's claim was pending, Robin spoke with Charles Danner, a local Alfa agent in Ozark. At that meeting, in November 1988, Robin learned for the first time that Hunter was the sole surviving beneficiary of his father's life-insurance policy and that Alfa was about to pay Hunter the proceeds. Robin, according to his affidavit, was already convinced that Hunter had committed the murder and he told Danner that the proceeds of the policy should be paid to the estate since Hunter was a prime suspect. Danner acknowledged that Robin told him that he wanted the policy proceeds paid to his father's estate, and that he, Danner, "transferred" this information by telephone to "someone" in the claims department at Alfa's home office. On December 2, 1988, Alfa paid Hunter $206,972.46, which was the full amount due according to the terms of the policy.
After Hunter confessed and was sentenced, 1993, Robin's attorney sent a letter demanding that Alfa pay him the proceeds of his father's insurance policy. Robin claimed that he, as the sole heir to his father's estate, was entitled to the proceeds and that Alfa's payment of the proceeds to Hunter was wrongful under Alabama law because Hunter had murdered the insured. Alfa declined to pay Robin the proceeds of the policy because, Alfa asserted, when it paid Hunter pursuant to the policy, it had received no written notice of an adverse claim, as required by § 43-8-253(f).
Robin sued Alfa; Alfa moved for a summary judgment. The trial judge recognized that the literal terms of § 43-8-253(f) required, for Alfa to be liable to Robin, that Alfa have received written notice of an adverse claim by Robin, at its home office or principal address, before it paid the claim to Hunter, and he recognized that the evidence indicated Alfa did not receive such written notice. If, however, the trial judge ruled that there was sufficient evidence indicating that, when it paid Hunter's claim, Alfa had oral notice of an adverse claim; oral notice, the trial court concluded, would satisfy the statutory notice requirement:
 "In summary the Court finds that the Plaintiff's statement to Danner that he thought the proceeds should be paid to the estate was `oral' notice of a claim under [Ala. Code 1976, §§ ] 43-8-253(f) and 27-14-4. The Court further finds that this oral notice created actual notice on the part of Alfa, which in the Court's opinion substantially complies with the requirements of [§§ ] 43-8-253(f) and 27-14-24."
We have stated the following with respect to the circumstances under which a party is entitled to a summary judgment:
 "A summary judgment is proper when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party. In determining the existence or absence of a genuine issue of material fact, *Page 327 
this Court is limited to a consideration of the factors that were before the trial court when it ruled on the summary judgment motion. However, this Court's reasoning is not limited to that applied by the trial court.
 "Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to go forward with evidence demonstrating the existence of a genuine issue of material fact. Because this action was filed after June 11, 1987, the nonmovant must meet this burden by `substantial evidence.' Under the substantial evidence test, the nonmovant must present `evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'"
Chatham. v. CSX Transp., Inc., 613 So.2d 341, 343 (Ala. 1993), quoting West v. Founder's Life Assur. Co. of Florida,547 So.2d 870, 871 (Ala. 1989) (other citations omitted).
Alfa argues that it is not liable to the plaintiff under §43-8-253, because, Alfa argues, he failed to comply with the written notice requirement of § 43-8-253(f); that section reads as follows:
 "(f) . . . Any insurance company, bank, or other obligor making payment according to the terms of its policy or obligation is not liable by reason of this section unless prior to payment it has received at its home office or principle address written notice of a claim under this section."
In addition, § 27-14-24, Ala. Code 1975, provides:
 "Whenever the proceeds of, or payments under, a life or disability insurance policy or annuity contract, hereto or hereafter issued, become payable in accordance with the terms of such policy or contract . . . and the insurer makes payment thereof in accordance with the terms of the policy or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract or by such assignment, as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefore; and such payments shall fully discharge the insurer from all claims under the policy or contract, unless, before payment is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such other person claims to be entitled to such payment or some interest in the policy or contract."
"It is the general rule that when the insurer makes payment of the proceeds of insurance to the person who by the policy is the proper recipient, such payment is a discharge of the liability of the insurer." Miller v. Paul Revere Life Ins., Co., 81 Wn.2d 302,305, 601 P.2d 1063, 1065 (1972), citing 5 Couch on Insurance
§ 27.177 (2d ed. 1960).
Under § 43-8-253(c), an insurer that has paid the proceeds of a policy to a beneficiary who had feloniously and intentionally killed the insured may still be liable to pay the proceeds as though the beneficiary had predeceased the insured. Alabama's "Slayer's Statute," § 43-8-253, Ala. Code 1975, provides in subsection (c):
 "A named beneficiary of a . . . life insurance policy, . . . who feloniously and intentionally kills . . . the person upon whose life the policy is issued is not entitled to any benefit under the . . . policy . . . and it becomes payable as though the killer had predeceased the decedent."
This statute codifies public policy under prior Alabama law, which had applied the principle that a person cannot benefit from his own wrongdoing. See American Life Ins. Co. v. Anderson,246 Ala. 588, 21 So.2d 791 (1945); Potective Life Ins. Co. v. Linson,245 Ala. 493, 17 So.2d 761 (1944).
Robin admits that he did not, before Alfa paid the proceeds, send written notice of his claim to Alfa's home office or principal address, as would be required by the literal wording of § 43-8-253(f) and 27-14-24. However, he contends that he orally notified Charles Danner, Alfa's agent of his claim, and he argues and that this was sufficient to charge Alfa with actual notice that Robin had an adverse claim and to dispense with the statutory requirement of written notice to Alfa's home office or principal address. *Page 328 
In support of his position that his oral notice to Charles Danner was sufficient to comply with the statutory requirement of written notice, Robin relies exclusively upon cases interpreting the written-notice of the [occurrence of a workplace] accident" and that an employee will not be entitled to benefits if the notice provisions of the statute are not complied with. However, it has been recognized that "judicial construction [of this section] has, to a great extent, abrogated [its] literal application." Ragland Brick Co. v. Campbell, 409 So.2d 443, 445
(Ala.Civ.App. 1982); Beatrice Foods Co. v. Clemmons, 54 Ala. App. 150,306 So.2d 18, 19 (1975). It is well established both that written notice is not required under § 25-5-78 where it is shown that an employer had actual notice of an employee's accident and that oral notice to an agent of the employer may be sufficient to give the employer actual notice. See, e.g., Exparte Harris, 590 So.2d 285 (Ala. 1991); Steele v. General MotorsCorp., 705 So.2d 402 (Ala.Civ.App. 1990); Price Ceiling, Inc. v.Ray, 394 So.2d 58 (Ala.Civ.App. 1981).
It is true that both § 25-5-78 and § 43-8-253 require one party to furnish "written notice" of some fact to another party. However, it is not enough to say that, because oral notice of an employee's accident to an employer's agent may dispense with the written notice required by § 25-5-78, oral notice of an adverse claim to an insurer's agent is therefore sufficient to satisfy the requirement of § 43-8-253(f) that an insurer receive, at its home office or principal address, written notice of an adverse claim.
In the first place, in analyzing the courts' interpretation of § 25-5-78, one must recall that Alabama's workers compensation laws are liberally construed in favor of employees, in order to effectuate the beneficent purposes of those laws.National Sec. Ins. Co., v. Donaldson, 664 So.2d 871 (Ala. 1995). No similar principle of construction attends the "Slayer's Statute" to the benefit of adverse claimants. Further, it has been noted that other provisions of the Workers' Compensation Act indicate that an employer's actual knowledge of a worker's accident is the equivalent of the written notice required by § 25-5-78. Specifically, § 25-5-78, Ala. Code 1975, provides that an employee suing for workers' compensation benefits must aver "the knowledge of the employers of the [employees's] injury or the notice to him thereof, which must be of the kind provided for in [ § 25-5-78]" (emphasis added). Section 25-5-59(a), Ala. Code 1975, similarly provides that compensation for a temporary disability shall not be paid "in any case unless the employer has actual knowledge of the injury or is notified thereof with the period specified in Section 25-5-78" (emphasis added). Indeed, in Ex parte Stith Coal Co., 213 Ala. 399,104 So. 756 (1925), which has been recognized as the first Alabama decision declaring that an employer's actual notice of an employee's accident dispenses with the statutory requirement of written notice, this Court noted that the language now codified at § 25-5-78, "[s]tanding along, . . . imports notice in writing as a condition precedent in all cases." 213 Ala. 400,104 So. at 757. See Morgan v. Northeast Alabama Regional MedicalCenter, 624 So.2d 560, 563 (Ala. 1993). It was only after reading the language now codified at § 25-5-78 in pari materia with that codified at §§ 25-5-59 and 25-5-88 that the Court concluded the employer's actual knowledge should be considered the equivalent of the statutory notice, "in keeping with the humane spirit of compensation laws." 213 Ala. at 400,104 So. at 757. In contrast, no provision of the Slayer's Statute suggests that oral notice of an adverse claim dispenses with the written-notice requirement of § 43-8-253(f)
We disagree with Robin's contention that oral notice to Alfa's agent was sufficient to constitute actual notice and to comply with the statute. Not only would Robin's interpretation read out of the statute the requirement that the notice of an adverse claim be "written," but it also would eliminate the requirement that the notice be directed to the insurer's home office or principal *Page 329 
address." In Beavers v. County of Walker, 645 So.2d 1365, 1376-77
(Ala. 1994), this Court stated:
 "The first rule of statutory construction is that the intent of the legislature should be given effect. Ex parte McCall, 596, So.2d 4 (Ala. 1992); Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301 (Ala. 1991). However, when possible, the intent from the language of the statute itself. Dillard, supra. Thus, where the language of the statute is plain, the court must give effect to the clear meaning of that language. Ex parte United Service Stations, Inc., 628 So.2d 501 (Ala. 1993); IMED Corp. v. Systems Eng'g Associates Corp., 602 So.2d 344 (Ala. 1992)."
The pertinent language of § 43-8-253(f) is not ambiguous. It clearly states that an insurance company making payment according to the terms of a policy is not liable to a claimant, such as the plaintiff in this case, unless before making the payment the insurance company receives, at its home office or principal address, written notice of an adverse claim. Robin argues that Alfa waived the right to assert, in support of its summary judgment motion, the lack of notice and he argues that Alfa is equitably estopped from pleading the notice defense. Those arguments fail as well. Written notice is legislatively imposed prerequisite of § 43-8-253(f); if was not met here.
For the reasons stated above, Alfa was entitled to a summary judgment. We reverse the order denying Alfa's motion for a summary judgment, and we render a judgment for Alfa.
REVERSED AND JUDGMENT RENDERED.
[1] In 1987, Federated Guaranty Life Insurance Company became known as Alfa Life Insurance Company.
HOOPER, C.J., and HOUSTON, COOK, SEE, and LYONS, JJ., concur.
MADDOX, J., recuses himself.