MONUMENTAL LIFE INS.
CO., Plaintiff,

v.

Sandra LYONS–NEDER,
et al., Defendants.

No. CIV. A. 00–D–509–E.

United States District Court,
M.D. Alabama,
Eastern Division.

March 28, 2001.

---

Ronald W. Self, Columbus, GA, for Continental Casualty.

Ollie L. Blan, Jr., W. Gregory Smith, Spain & Gillion, Birmingham, AL, for Monumental Life.

Jere L. Beasley, Wilson Daniel Miles III, Clinton C. Carter, Beasley, Allen, Crow, Methvin, Portis & Miles, Montgomery, AL, for Sandra Lyons–Neder.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Counterclaim Defendant Monumental Life Ins. Co.'s ("Monumental") Motion For Summary Judgment ("Mot."), filed February 14, 2001. On March 9, 2001, Counter–Plaintiff Sandra Lyons–Neder ("Lyons–Neder") filed a Response In Opposition To Summary Judgment ("Resp."), and Monumental filed a Reply on March 16, 2001. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Monumental's Motion is due to be granted.

### I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The Parties do not contest personal jurisdiction or venue.

### II. SUMMARY JUDGMENT STANDARD

The court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co. .,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At

this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely determines whether there is more than "some metaphysical doubt" about whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted); *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. BACKGROUND

This action initially began as a statutory interpleader action pursuant to 28 U.S.C § 1335. On December 8, 1998, Norman Thomas Neder ("Mr. Neder") was found dead lying beneath a bridge on a rural road in Chambers County, Alabama. (Monumental's Ex. A to Flood Aff. at ML 0134–0135.)[1] According to the autopsy report released by the Alabama Department of Forensic Sciences on January 25, 1999, Mr. Neder's death was caused by "blunt force trauma" to the head with a resultant skull fracture. (*Id.* at 0115–0121.) The Alabama Department of Forensic Sciences, the Chambers County Sheriff's Department, and the Chambers County District Attorney classified Mr. Neder's death as a "homicide." (*Id.* at 0115–0121, 0134–0135.)

At the time of his death, Mr. Neder's life was insured under two group accidental death policies issued by Monumental. The first initially insured Mr. Neder's life in the amount of $200,000. (Monumental's Ex. 3 at SNEDER 7–12.) Four months prior to Mr. Neder's death, the amount of coverage on the first policy was increased to $400,000. (Monumental's Ex. A to Flood Aff. at ML 0002, 0007.) The second policy provided for a $250,000 benefit for accidental death. (Monumental's Ex. B to Flood. Aff. at 0234–0249.)

The two policies specifically provide:

### GENERAL PROVISIONS

\*  \*  \*  \*  \*  \*

A Dependent's Beneficiary is the Member. If the Member dies before the Dependent, any benefit for the Dependent will be paid to the first surviving class of the following: the Dependent's spouse, children, parents, brothers and sisters, executors or administrators.

(Monumental's Suppl. Ex. at 6; Ex. 3 at Sneder 11.)[2]

At the time of Mr. Neder's death, Lyons–Neder was the designated beneficiary of both policies. On February 1, 1999, Lyons–Neder submitted to Monumental her claim to benefits of both policies. (Monumental's Ex. A to Flood Aff. at ML 0075; Ex. B at ML 0187–0188; Ex. 3 at SNEDER 15–18.) Lyons–Neder indicated on her claim forms that the cause of Mr. Neder's death was "Blunt Force Trauma to Head—Homicide—Still Under Investigation." (*Id.*)

1. The numbers and letters ML–0001, *et seq.*, refer to the Bates stamp numbers found in Exhibits A, B, and C to the Affidavit of Roger Flood, which is attached as Exhibit 2 to Monumental's Motion For Summary Judgment. The numbers and letters SNEDER 7, *et seq.*, refer to documents produced by Lyons–Neder, which are attached as Exhibits 3 and Exhibit 4 to Monumental's Motion For Summary Judgment.

2. Plaintiff's counsel represents to the court that "this language is not contained in the policy itself." (Resp. at 3.) However, the policies produced to the court by Monumental, which were originally submitted to Monumental by Lyons–Neder, do in fact contain the cited provision. The court assumes that counsel for Plaintiff was simply mistaken when he represented otherwise to the court. In the future, the court reminds Plaintiff's counsel of his duty to conduct a "reasonable" inquiry into the accuracy of his contentions. *See* FED. R. CIV. P. 11.

Upon receiving Lyons–Neder's claims for the policy benefits, Monumental commenced an investigation to determine if Mr. Neder's death was accidental, as required by the terms of the policy, and to determine whether Lyons–Neder was the rightful beneficiary of the two policies. (Monumental's Ex. A to Flood Aff. at ML 0130–0151.) As part of its investigation, Monumental retained the services of international claims specialists to investigate the death of Mr. Neder through contacts with the Chambers County Sheriff's Department, the Chambers County District Attorney's Office and the Georgia Bureau of Investigation. (*Id.* at ML 0020, 0052–0053, 0056, 0073, 0131, 0142, 0147, 0149; Ex. C at ML 0250, 0251, 0256, 0262.) In addition, Monumental also made numerous direct contacts with the Chambers County Sheriff's Department and the Chambers County District Attorney's Office concerning the death of Mr. Neder. (*Id.*) Each of these contacts with the respective law enforcement agencies has revealed that the investigation into the homicide of Mr. Neder is ongoing and open, that Lyons–Neder is a suspect in the homicide of Mr. Neder, and/or that Lyons–Neder has not been ruled out as a suspect in the murder of Mr. Neder. (*Id.*) Although the authorities indicate that Lyons–Neder remains a suspect, at no time since Mr. Neder's death has Lyons–Neder been indicted, arrested, or accused of killing her husband.

From September 1999 until January 10, 2000, Monumental corresponded with Lyons–Neder's attorney, Jane Kent Mitchell, concerning the status of Lyons–Neder's claims to the policy proceeds. (Monumental's Ex. A to Flood Aff. at ML 0023, 0025, 0045, 0051.) Monumental advised Lyons–Neder that law enforcement agencies consider Lyons–Neder to be a suspect in Mr. Neder's murder and informed Lyons–Neder that "[b]ecause the investigation has not ruled out Mrs. Neder as a suspect, [Monumental] cannot conclusively determine who the proper payee should be." (*Id.* at ML 0023, 0025, 0045, 0051.)

Facing the threat of litigation by Lyons–Neder and having notice of Lyons–Neder's status as suspect in the murder of Mr. Neder, Monumental filed a statutory interpleader action naming Lyons–Neder and Mr. Neder's daughter, Amy Neder, as defendants. Monumental also deposited with the Clerk of the court the sum of $774,890.41, being the total amount due and owing under the two policies issued by Monumental, plus interest accrued thereon from the date Monumental first received notice of Mr. Neder's death. (Compl. in Interpleader.)

In answer to the Complaint in Interpleader, Amy Neder claimed all of the proceeds of the policies as the sole surviving child of Mr. Neder. (Answer of Amy Neder.)

On June 12, 2000, Lyons–Neder filed her Answer to the Complaint in Interpleader. Included in her Answer, Lyons–Neder asserted a four-count Counterclaim against Monumental. In Count One, Lyons–Neder alleges that Monumental misrepresented "that these policies of insurance would pay her the death benefit upon the death of her husband." (Answer of Lyons–Neder at ¶ 23.) In Count Two, Lyons–Neder claims that Monumental "breached their agreement with Lyons–Neder, and failed in their duty of fair dealing and good faith ... by failing and refusing to pay benefits of the aforesaid life insurance policies." (*Id.* at ¶ 27.) Lyons–Neder alleges in Count Three of her Counterclaim that Monumental "fraudulently, and in bad faith, failed to properly investigate [Lyons–Neder's claim], and to pay the benefit amount owed to Lyons–Neder." (*Id.* at ¶ 30.) Finally, in Count Four of her Counterclaim Lyons–Neder alleges "Monumental failed to perform its

duties as required under the policies." (*Id.* at 33.)

## IV. DISCUSSION

Monumental moves for summary judgment on all claims asserted by Lyons–Neder. At the outset, the court finds that Lyons–Neder has abandoned her misrepresentation claim. Monumental filed a sufficient motion for summary judgment, and Lyons–Neder failed to oppose this portion of the motion. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) (abandoned claims); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (summary judgment standard). Moreover, for the reasons explained below, the court finds that Monumental is entitled to summary judgment on Lyons–Neder's breach of contract and bad faith claims as well.

### A. *The Interpleader Action*

The basis of Monumental's statutory interpleader action concerns the interplay between public policy, the Alabama "Slayer Statute," and the distribution of proceeds provisions contained within the two life insurance policies at issue. On the one hand, it is well settled that a person cannot be permitted to benefit from his own wrongdoing. *See Protective Life Ins. Co. v. Linson*, 245 Ala. 493, 17 So.2d 761 (1944); 4 Couch, *Couch Cyclopedia of Insurance Law*, § 27:150 (2d rev. ed.1987). Indeed, as early as 1886, the Supreme Court of the United States proclaimed that "it would be reproach to the jurisprudence of this country, if one could recover insurance money payable on the death of a party whose life had feloniously been taken." *Mutual Life Ins. Co. v. Armstrong*, 117 U.S. 591, 600, 6 S.Ct. 877, 29 L.Ed. 997 (1886). This principle has been codified in § 43–8–253 of the Code of Alabama, which provides:

A named beneficiary of a ... life insurance policy, ... who feloniously and in-

tentionally kills ... the person upon whose life the policy is issued is not entitled to any benefit under the ... policy ... and it becomes payable as though the killer had predeceased the decedent.

ALA. CODE § 43–8–253 (1975). On the other hand, the terms of the life insurance policies at issue make the following provision for a situation where the beneficiary predeceases the insured:

### GENERAL PROVISIONS

\*    \*    \*    \*    \*    \*

A Dependent's Beneficiary is the Member. If the Member dies before the Dependent, any benefit for the Dependent will be paid to the first surviving class of the following: the Dependent's spouse, children, parents, brothers and sisters, executors or administrators.

(Monumental's Suppl. Ex. at 6; Ex. 3 at SNEDER 11.)

At the time Lyons–Neder filed her claim, she notified Monumental that Mr. Neder had been murdered and that the investigation to determine who killed Mr. Neder was ongoing. (Flood Aff. at ML 0075, 0187–0188; SNEDER 00000015–00000018.) Monumental subsequently learned from contacts with the Chambers County Sheriff's Department and the Chambers County District Attorney that the beneficiary and claimant, Lyons–Neder, is either a suspect in the murder or has not been ruled out as a suspect in the murder of Mr. Neder. The express terms of the policy provide that if Lyons–Neder "predeceases" Mr. Neder, the proceeds would be paid, in this case, to Amy Neder. Thus, if Lyons–Neder feloniously and intentionally killed or participated in the murder of Mr. Neder, then Amy Neder would be the rightful beneficiary of the policies at issue. ALA. CODE § 43–8–253 (1975).

In light of these facts, Monumental contends that it properly interpleaded the proceeds of the two policies at issue, completely discharging any duty it had under the policies and entitling Monumental to summary judgment on Lyons–Neder's bad faith and breach of contract claims. The court agrees.

### B. *The Applicable Law*

■ The Supreme Court of Alabama has specifically addressed the viability of breach of contract and bad faith counterclaims against a stakeholder in an interpleader action on at least two occasions. *See Gilbert v. Congress Life Ins. Co.*, 646 So.2d 592 (Ala.1994) and *Stone v. Southland Nat'l Ins. Corp.*, 589 So.2d 1289 (Ala. 1991). In both cases, the Court rejected such claims, as a matter of law, because by virtue of the stakeholder's interpleader of the proceeds or stake the plaintiff could not prove the breach of contract or "refusal to pay" element necessary for each claim. The court explained:

> By initiating an interpleader action, the stakeholder is admitting that it holds funds that are not its own, but says that it owes those funds to an undetermined party. 'Historically, interpleader was available to protect a party who recognized an indebtedness, *was willing to pay it,* but was only interested in paying it once. The interpleader procedure affords the payor an opportunity to clothe his disbursement with the protection of a judicial determination.' Champ Lyons, Jr., *Alabama Rules of Civil Procedure Annotated,* vol. 1, p. 344 (2d ed.1986) (emphasis added). Because filing an interpleader action is equivalent to the plaintiff's admitting that it is willing to pay the legitimate claimant, an interpleading stakeholder cannot logically be subjected to a claim alleging bad faith refusal to pay, under the circumstances of this case. As we held in *Stone v. Southland National Ins. Corp.*,

589 So.2d 1289 (Ala.1991), a stakeholder who interpleads the funds claimed has not refused to pay. 'To the contrary, by interpleading, [the stakeholder] paid to the court an amount that the parties do not dispute is the full amount due, although it did not pay those proceeds to [any particular claimant].' *Id.* at 1291.

*Gilbert,* 646 So.2d at 594 (italics original).

### C. *Lyons–Neder's Arguments*

Monumental requests the court enter summary judgment on Lyons–Neder's claims of bad faith and breach of contract. In support of its Motion For Summary Judgment on these claims, Monumental relies upon *Gilbert, supra,* and *Stone, supra.* Lyons–Neder sets forth three arguments in opposition to summary judgment. The court will address each of Lyons–Neder's arguments in turn.

First, Lyons–Neder contends that Monumental's reliance on *Gilbert* and *Stone* is misplaced. According to Lyons–Neder, the statements and holdings of *Gilbert* and *Stone* should not apply to this case because those cases involved a determination of the intentions of the insured as to the rightful beneficiary, not consideration of the possible application of the Slayer Statute. The court finds that Lyons–Neder's distinction turns upon extraneous facts and not upon the relevant legal concepts. The purpose of interpleader is to permit a disinterested stakeholder to seek judicial determination when there is a fact question as to who is entitled to the policy proceeds. Whether the fact question arises from conflicting interpretations of the insured's intent or the potential application of the Slayer Statute is immaterial. It is undisputed that Monumental has paid all sums due and owing under the policies at issue into the court. Thus, the court finds that the reasoning of *Gilbert* and *Stone* is applicable,

and Monumental's reliance thereon is sound.

■ Second, Lyons–Neder attempts to circumvent the rule of law established by *Gilbert* and *Stone* by conjuring up a specific claim denial by Monumental. Lyons–Neder argues that two letters Monumental wrote Lyons–Neder and/or her lawyer during Monumental's initial investigation should be construed as a denial of Lyons–Neder's claim to the proceeds. (Resp. at 4–5.) The court has reviewed the letters Lyons–Neder characterizes as denials, and finds that there is no merit to Lyons–Neder's contention.

The October 22, 1999 letter, which Lyons–Neder describes as a denial, advises Lyons–Neder of the status of her claim, informs Lyons–Neder that she is considered a suspect in Mr. Neder's murder, and explains that "[b]ecause the investigation had not ruled out Mrs. Neder as a suspect, [Monumental] cannot conclusively determine who the proper payee should be." (Monumental's Ex. A to Flood Aff. at ML 0045–0046.) In addition, Monumental requests that Lyons–Neder provide Monumental with documentation "from the Chamber's County Sheriff's Office and the Chamber's County District Attorney that Mrs. Sandra Neder has been ruled out as a suspect, and had no involvement in Mr. Neder's death for [Monumental's] review." (*Id.*) The words "deny," "denied" and "denial" appear nowhere on the October 22, 1999 letter.

The second letter Lyons–Neder characterizes as a "denial letter" is a letter sent to Lyons–Neder's lawyer on December 20, 1999, responding to the November 17, 1999 letter sent by Lyons–Neder's lawyer. (*Id.* at ML 0025, 0042–0043.) When these two letters are read together in context, no reasonable person could conclude that Monumental denied Lyons–Neder's claim. Lyons–Neder's attorney posed the following question to Monumental in her November 17, 1999 letter:

> Because no secondary beneficiary is designated on the policy of insurance, I presume you will pay the estate. In that case, the Will of Mr. Neder states that if his wife has predeceased him, any insurance proceeds are to be paid to a stated legatee. If Mrs. Neder signs a waiver of the proceeds by the beneficiary, a release from liability for Monumental, and agrees that the proceeds shall be paid directly to the devisee in her husband's Last Will and Testament, would you be willing to pay over said proceeds if that person is not considered a suspect?

(*Id.* at ML 0042–0043.)

On December 20, 1999 Monumental responded to the question by advising that such could not be done because Monumental "would by-pass the previous classes" designated in the policies as "children, parents, brothers and sisters, executors or administrator." (*Id.* at ML0027.) Again, at no place in this letter does Monumental deny Lyons–Neder's claim to the proceeds.

While the court is obliged to draw all inferences in favor of the non-moving party, those inferences must be reasonable. No reasonable person could construe these letters as a denial of benefits. Just because Lyons–Neder labels them "denial letters"—no doubt in an attempt to satisfy a necessary element of her causes of action—does not mean that they are denials in fact. The court finds that Lyons–Neder's evidence is insufficient to circumvent the law established in *Gilbert* and *Stone*. Lyons–Neder's breach of contract and bad faith claims fail, as a matter of law, because there has been no claim denial or refusal to pay in this case by virtue of Monumental's statutory interpleader action.

■ Third, Lyons–Neder opposes Monumental's summary judgment motion upon the premise that Monumental's "excuse for filing the interpleader (fear of double exposure to Amy Neder) is a pretextual denial because Amy Neder never filed a claim for the proceeds before this interpleader action was filed." (Resp. at 6.) In essence, Lyons–Neder contends that interpleader was inappropriate in this case because Monumental had no real or legitimate fear of duplicative litigation or multiple claims because Amy Neder never filed a written claim with Monumental between the time Monumental received Lyons–Neder's claim and the time Monumental received instituted this statutory interpleader action.

In support of this contention, Lyons–Neder relies upon the Supreme Court of Alabama's decision in *Alfa v. Culverhouse*, 729 So.2d 325 (Ala.1999), and the Court's interpretation and application of §§ 27–14–24 and 43–8–253(f) of the Alabama Code therein.[3] In *Culverhouse*, the heir of the deceased insured made a claim for the benefits of a life insurance policy pursuant to the Slayer Statute after the paid beneficiary admitted to killing the insured. 729 So.2d at 325. ALFA declined to pay the heir because, it asserted, that when it paid the beneficiary pursuant to the policy it had not received any written notice of an adverse claim as required by § 43–8–253(f)

and § 27–14–24 of the Alabama Code. *Id.* On appeal, the Supreme Court of Alabama held that written notice, not oral notice, was required by the two statutes, and that the heir could not recover from ALFA because he had only given oral notice of his adverse claim to ALFA's agent prior to ALFA's disbursement of the proceeds to the beneficiary. *Id.* at 328–29.

The court finds that the facts in *Culverhouse* differ from those here in two important ways. First, in *Culverhouse* there was no evidence that prior to the disbursement of the policy proceeds ALFA was on notice of any facts suggesting that the paid beneficiary was not entitled to a disbursement of the policy proceeds due to his involvement in the death of the insured. In the case at bar, from the time Lyons–Neder filed her claim with Monumental until the present, Monumental has had actual notice of facts suggesting that Lyons–Neder may not be entitled to policy proceeds due to her suspected or possible involvement in the death of Mr. Neder. Second, the heir in *Culverhouse* was neither a named nor designated beneficiary of the policy at issue therein. Here, Ami Neder, by virtue of the express terms of the two policies at issue, would be the sole, designated and rightful beneficiary of the policies if it was determined that Lyons–Neder feloniously and intentionally killed Mr. Neder.

3. Section 43–8–253, Ala.Code 1975, provides: (f) ... Any insurance company, bank, or other obligor making payment according to the terms of its policy or obligation is not liable by reason of this section unless prior to payment it has received at its home office or principal address written notice of a claim under this section.
  Section 27–14–24 reads as follows:
  Whenever the proceeds of, or payments under, a life or disability insurance policy or annuity contract, heretofore and hereafter issued, become payable in accordance with the terms of such policy or contract, ... and the insurer makes payment thereof in

accordance with the terms of the policy or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract, or by such assignment, as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor; and such payments shall fully discharge the insurer from all claims under the policy or contract, unless, before payment is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such other person claims to be entitled to such payment or some interest in the policy or contract.

■ Although the Supreme Court of Alabama has not considered these precise issues, other state and federal courts to address these issues have concluded that under these circumstances an insurance company has a duty to clothe its disbursement of the proceeds of the policy with the protection of a judicial determination.

In *Harper v. Prudential Ins. Co. of America*, 233 Kan. 358, 662 P.2d 1264, 1266 (1983), the contingent beneficiary of a life insurance policy issued by Prudential sued to recover the proceeds after Prudential had paid the primary beneficiary. The insured died in her home after she was shot in the head. *See id.* After the primary beneficiary, who was the insured's husband, claimed the proceeds, Prudential learned that the death of the insured was classified as a homicide by the local law enforcement agency, and that the primary beneficiary was a suspect in the murder of the insured. *Id.* at 1267. Despite this knowledge, Prudential paid the proceeds of the policy to the primary beneficiary before the criminal investigation was completed. Two years later, the primary beneficiary was indicted for killing the insured. The trial court ordered Prudential to pay an additional amount equal to the benefits paid under the policy to the contingent beneficiary. *Id.*

In affirming the trial court's judgment, the Kansas Supreme Court held: .

We have concluded that, under all the circumstances, Prudential should have either delayed making payment to Fenton or filed an interpleader action. By interpleading the contingent beneficiary so that he might have an opportunity to protect his rights, Prudential could have protected itself from a double liability. Clearly an insurance company should

not make payment to the primary beneficiary where it has been specifically notified by the criminal authorities that an investigation of the beneficiary's participation in the killing of the insured is still continuing and case has not yet been closed.

*Harper*, 662 P.2d at 1274.

In reaching this conclusion, the *Harper* Court relied heavily upon the Fifth Circuit's statements in *Weed v. Equitable Assurance Soc.*, 288 F.2d 463 (5th Cir.1961), concerning the "general rule which governs the liability of an insurance company for payment to a contingent beneficiary after payment to a primary beneficiary." [4] *Id.* at 1273. The Fifth Circuit stated this general rule as follows:

Payment in good faith to the beneficiary of record by the insurance company without knowledge of fact vitiating the claim will prevent a second recovery by another claimant.

*Weed*, 288 F.2d at 464.

Similarly, in *Glass v. U.S.*, 506 F.2d 379, 380 (10th Cir.1974), the insured, Glass, dies as a result of gunshot wounds. At the time of his death, Glass was insured under a life insurance policy issued by the Veterans Administration ("VA"). Glass's second wife was the primary beneficiary and his children were contingent beneficiaries. The wife filed a claim for the proceeds. Prior to paying the proceeds, the VA was notified that the wife had been indicted for the murder of the insured. Thereafter, the contingent beneficiaries made claim upon the VA for the proceeds of the policy. The VA, however, denied the claim. The trial court held in favor of the contingent beneficiaries and permitted them to recover on the insurance policy. *Id.* at 381. On appeal, the Tenth Circuit affirmed, holding that the VA could easily have avoided dou-

---

4. The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*See Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

ble payment by filing an interpleader action, which it considered to be specifically designed to cases of this type. *Id.* at 382; *see also Overstreet v. Kentucky Central Life Ins. Co.,* 950 F.2d 931, 940 (4th Cir. 1991) ("An insurer faced with potential conflicting claims by a possible slayer and the insured's estate may absolve itself of excess liability by paying the proceeds into the registry of the court and filing an action in interpleader to determine the proper recipient"); *Prudential Ins. Co. v. Tull,* 690 F.2d 848, 849 (4th Cir.1982).

The court finds that these principles of law do not conflict with § 27–14–24 or § 43–8–253(f), nor the Supreme Court of Alabama's interpretation of the statutes in *Culverhouse.* To the contrary, neither § 27–14–24 nor § 43–8–253(f) require or mandate an insurer to disburse policy proceeds to a known or suspected slayer if the insurance company has not received written notice of the claim. The court finds that the protection afforded by these statutes would not be available to an insurance company that has notice that the primary beneficiary is an actual suspect in the murder of the insured, and the insurance company knows of a contingent beneficiary who may be the rightful beneficiary. In other words, the statutes relied upon by Lyons–Neder do not abrogate the common law duties and responsibilities that Monumental owed Amy Neder under the circumstance of this case.

## V.  CONCLUSION

Lyons–Neder has abandoned her misrepresentation claim, and her breach of contract and bad faith claims fail as a matter of law. Based upon the information contained in the claims submitted by Lyons–Neder and information gleaned from Monumental's investigation: the death of Mr. Neder is a homicide; the investigation as to the culprit is presently ongoing by local law enforcement agencies; and the local law enforcement agencies

presently consider Lyons–Neder either a suspect or have not ruled her out as a suspect in the murder of Mr. Neder. Consequently, there is an issue of fact as to whether Lyons–Neder feloniously and intentionally killed Mr. Neder, and thus, Monumental has properly commenced this interpleader action to determine the rightful beneficiary of the policy proceeds at issue. Under the facts of this case and pursuant to the law established in *Gilbert* and *Stone,* the court finds that Monumental is entitled to summary judgment on Lyons–Neder's breach of contract and bad faith claims.

## VI.  ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Monumental's Motion For Summary Judgment be and the same is hereby GRANTED.